UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHARLITA LYONS THOMPSON,

                Plaintiff,

v.                               CASE No. 8:19-cv-2887-T-TGW

ANDREW SAUL,
Commissioner of Social Security,

                Defendant.

_____

## O R D E R

The plaintiff in this case seeks judicial review of the denial of her claims for Social Security disability benefits and supplemental security income payments.[1]   Because the Commissioner of Social Security improperly used the medical-vocational guidelines in determining that the plaintiff is not disabled, the Commissioner's decision will be reversed, and the matter remanded for further proceedings.

I.

The plaintiff, who was fifty-one years old at the time of the most

_____

[1]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 15).

recent administrative hearing and who completed two years of college, has worked as a loan officer, sales representative, and insurance agent (Tr. 69, 152, 397).

On December 8, 2014, the plaintiff filed claims for Social Security disability benefits and supplemental security income payments, alleging that she became disabled on January 1, 2014, due to PTSD (post-traumatic stress disorder), a heart condition, migraine headaches and COPD (chronic obstructive pulmonary disease) (Tr. 152, 195).   The claim was denied initially and upon reconsideration.

The plaintiff, at her request, received a de novo hearing before an administrative law judge, who found that the plaintiff had severe impairments of obesity, hypertension and degenerative disc disease, but concluded that those impairments were not disabling (Tr. 197, 202).   The plaintiff appealed the decision to the Appeals Council, which vacated the decision and remanded the case for the law judge to give further consideration to the plaintiff's mental impairments and her maximum residual functional capacity (Tr. 209–10).

The plaintiff subsequently amended her alleged onset date to February 1, 2017 (Tr. 379).  Administrative Law Judge James P. Alderisio

2

conducted the second administrative hearing, at which he received testimony from the plaintiff and a vocational expert. The law judge issued a new decision, finding that the plaintiff had severe impairments of obesity, degenerative disc disease, PTSD and anxiety (Tr. 64). He concluded further that, with these impairments, the plaintiff had "the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is limited to simple work" (Tr. 66).

Based upon the testimony of a vocational expert, the law judge found that the plaintiff could not perform prior work (Tr. 69). However, the law judge determined, based on the medical-vocational guidelines that a "significant numbers of unskilled jobs exist in the national economy" that the plaintiff could perform (Tr. 70). Consequently, the law judge decided that the plaintiff was not disabled from February 1, 2017, through September 14, 2018, the date of the decision (Tr. 70–71). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

II.

A. In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable

3

physical or mental impairment which … has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

B.  The administrative law judge decided the plaintiff's claim under regulations designed to incorporate vocational factors into the determination of disability claims. See 20 C.F.R. 404.1569; 416.969. Those regulations apply in cases where an individual's medical condition is severe enough to prevent her from returning to her former employment, but

5

may not be severe enough to prevent her from engaging in other substantial gainful activity.   In such cases, the regulations direct that an individual's residual functional capacity, age, education and work experience be considered in determining whether the claimant is disabled.   These factors are codified in tables of rules, known as guidelines or grids, that are appended to the regulations.   20 C.F.R. Part 404, Subpart P, Appendix 2. If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled.   20 C.F.R. 404.1569a.   If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability, but is advisory only.   Id.

### III.

The plaintiff challenges the law judge's decision on two grounds.   She alleges that the law judge erred by failing to obtain the testimony of a vocational expert concerning other work available to her in the national economy, and that the law judge's determination of her residual functional capacity assessment is not supported by substantial evidence (Doc. 25, pp. 9, 16).   The first contention has merit.

6

A.    The plaintiff argues first that the law judge erred by failing to develop testimony from a vocational expert and relying instead upon the grids to determine whether her functional limitations prevent her from engaging in substantial gainful activity.    Specifically, she contends that the law judge's finding that she is "limit[ed] to 'simple work' required the use of a VE, not exclusive reliance on a social security ruling and the GRIDS" (Doc. 25, p. 16).[2]

In the Eleventh Circuit, "[e]xclusive reliance on the grids is not appropriate either when [a] claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that significantly limit basic work skills." Francis v. Heckler, 749 F.2d 1562, 1566 (11th Cir. 1985).    "It is only when the claimant can clearly do unlimited types of light work ... that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy." Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981).

---

[2]The plaintiff also contends she had other nonexertional impairments necessitating the testimony of a vocational expert (see Doc. 25, pp. 14, 16).    That contention is disregarded.  The court's analysis is based solely on the law judge's finding of a nonexertional limitation to simple work.

7

Here, the law judge recounted that the plaintiff had been diagnosed with PTSD/anxiety and depression, and he found that the plaintiff's PTSD and anxiety were "severe" impairments (Tr. 64). This means that they "significantly limit the [plaintiff's] ability to perform basic work activities." 20 C.F.R. 404.1522(a), 416.922(a). Accordingly, the foregoing frequently quoted principle from Francis v. Heckler is itself sufficient to demonstrate that the finding of a severe mental impairment, by definition, precludes exclusive reliance on the grids.

Furthermore, the law judge specified that the plaintiff had a moderate limitation in the area of understanding, remembering, or applying information (Tr. 65). In order to "accommodate the claimant's mental impairments," the law judge "reduced the [plaintiff's] residual functional capacity by limiting her to simple work" (Tr. 69; see also Tr. 66).[3] Thus, the

---

[3]The law judge noted that the area of understanding, remembering, or applying information encompasses many mental functions, including (Tr. 65):

> understanding and learning terms, instructions, and procedures, following one-or-two step oral instructions to carry out a task, describing work activity to someone else, asking and answering questions and providing explanations, recognizing a mistake and correcting it, identifying and solving problems, sequencing multi-step activities, and using reason and judgment to make work-related decisions.

8

plaintiff clearly did not have the ability to do a full range of light work. Accordingly, the law judge could not rely upon the grids, but was required to employ a vocational expert.

This conclusion is confirmed by other decisions of the Eleventh Circuit. In <u>Allen</u> v. <u>Sullivan</u>, 880 F.2d 1200 (11th Cir. 1989), a law judge found that the claimant had nonexertional limitations concerning performing complex tasks and tolerating extraordinary stress. The law judge found that these limitations reduced the full range of light work only <u>slightly</u> and therefore applied the grids to determine that the plaintiff was not disabled. <u>Id</u>. at 1201. The Eleventh Circuit concluded that this was reversible error. Quoting <u>Ferguson</u> v. <u>Schweiker</u>, 641 F.2d 243, 248 (5th Cir. 1981) (emphasis in original), the court stated (880 F.2d at 1202):

> It is only when the claimant can clearly do *unlimited* types of light work ... that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.

The Eleventh Circuit reached a similar conclusion in <u>Marbury</u> v. <u>Sullivan</u>, 957 F.2d 837 (11th Cir. 1992), a case relied upon by the plaintiff in her memorandum (Doc. 25, p. 15). There, a law judge found that a claimant had a nonexertional limitation regarding working around unprotected heights

or dangerous moving machinery.  Id. at 839.  He concluded that the claimant could perform a wide range of light work and, therefore, it was unnecessary to call a vocational expert.  Id.  The court of appeals reversed, citing the foregoing quotation from Ferguson v. Schweiker and Allen v. Sullivan.  The court elaborated (id.) (emphasis added):

> Under the ALJ's findings it is evident that claimant was not able to do *unlimited* types of light work, because he was precluded from work around unprotected heights or dangerous moving machinery.  Expert testimony was therefore required to determine whether Marbury's limitations were severe enough to preclude him from performing a wide range of light work.  Allen, 880 F.2d at 1202.  An ALJ's conclusion that a claimant's limitations do not significantly compromise his basic work skills or are not severe enough to preclude him from performing a wide range of light work is not supported by substantial evidence unless there is testimony from a vocational expert.  Id.  It was therefore error to rely upon the grids.  Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985).

See also Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995) ("Exclusive reliance on the grids is appropriate in cases involving only exertional impairments....").

As indicated, the law judge determined that the plaintiff had nonexertional mental impairments that limited her to simple work.  Thus,

what the Eleventh Circuit stated in <u>Allen</u> v. <u>Sullivan</u>, <u>supra</u>, 880 F.2d at 1202, is pertinent here: "Absent testimony from a vocational expert, the ALJ's conclusion that [the plaintiff's] mental limitations do not significantly compromise her basic work skills or are not severe enough to preclude her from performing a wide range of work is not supported by substantial evidence."

Notably, I have remanded, based on this legal authority, other cases in which the law judge failed to obtain a vocational expert's testimony to determine whether a plaintiff's nonexertional mental impairments precluded a wide range of work. <u>See</u>, <u>e.g.</u>, <u>Watson-Perez</u> v. <u>Astrue</u>, No. 8:10-cv-2893-T-TGW, 2012 WL 112878; <u>McGary</u> v. <u>Astrue</u>, No. 8:09-cv-1525-T-TGW, 2010 WL 139099.

Significantly, a vocational expert was present at the administrative hearing. However, the only hypothetical questions presented by the law judge to the vocational expert concerned whether the plaintiff could do her past work (Tr. 108–10). Inexplicably, the law judge did not ask the vocational expert a hypothetical question about whether there were jobs in the national economy that a person with the plaintiff's residual functional capacity, age, and education could perform.

11

Instead, the law judge relied on the grids and a Social Security Ruling to conclude that "there are jobs that exist in significant numbers in the national economy that the claimant can perform" (Tr. 70). In this regard, the law judge reasoned (id.):

> If the claimant had the residual functional capacity to perform the full range of light work ... a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21 and Rule 202. 14....[T]he [claimant's] additional limitations have little or no effect on the occupational base of unskilled light work. A finding of "not disabled" is therefore appropriate under the framework of these rules. Social Security Ruling 83-10 states that the occupational base underlying the Medical Vocational Rules consists of numerous "unskilled" occupations existing at various exertional levels. 20 CFR 404.1568(a) and 416.968(a) define "unskilled" work as work consisting of "simple duties," i.e., "duties that can be learned on the job in a short period of time" and which require "little or no judgment." Therefore, an individual (like the claimant) who is able to perform "simple duties" is obviously able to perform "unskilled" work and the Medical Vocational Rules dictate that significant numbers of unskilled jobs exist in the national economy that such a person can perform.

The Commissioner argues that this explanation is substantial evidence supporting the law judge's decision. Citing to <u>Phillips</u> v. <u>Barnhart</u>, 357 F.3d 1232, 1242–43 (11th Cir. 2004), the Commissioner asserts

12

that a law judge "may rely on the Grids, and testimony from a vocational expert ... is not required, if a claimant can perform the full range of work at a particular exertional level and her nonexertional limitations ... do not prevent the performance of a wide range of work at the particular exertional level" (Doc. 29, p. 4). However, this is essentially a restatement of <u>Francis</u> v. <u>Heckler</u>. <u>See</u> 749 F.2d at 1566. Furthermore, <u>Phillips</u> does not hold that the Commissioner may rely exclusively upon the grids to make the initial determination whether a nonexertional impairment prevents the performance of a wide range of work at an exertional level, as the law judge did here.

In all events, the law judge found that the plaintiff's mental impairments were severe, which means that they did significantly limit her basic work skills and, concomitantly, a wide range of work at that exertional level. <u>See</u> <u>Phillips</u> v. <u>Barnhart</u>, supra, 357 F.3d at 1243 ("This Court has interpreted 'significantly limit basic work skills' as limitations that prohibit a claimant from performing 'a wide range' of work at a given work level."). Therefore, under <u>Phillips</u> exclusive reliance upon the grids was inappropriate in this case, and <u>Marbury</u> mandates the testimony of a VE in that

13

circumstance to determine the existence of jobs that the plaintiff can perform.

The Commissioner argues further that vocational testimony was unnecessary in this case because the grids "take administrative notice of the numbers of unskilled jobs at the various exertional levels that exist throughout the national economy" and, therefore, the limitation to simple work would have little or no effect on the occupational base of light work encompassed by the grids (see Doc. 29, pp. 15–16, citing Pt. 404, Subpt. P, App. 2, §200.00(b)). However, Eleventh Circuit precedent clearly states that, "[i]f nonexertional impairments exist, the ALJ may use the grids as a framework to evaluate vocational factors, but must also introduce independent evidence, preferably through a vocational expert's testimony, of the existence of jobs in the national economy that the claimant can perform." Wolfe v. Chater, 86 F.3d 1072, 1077–78 (11th Cir. 1996) (emphasis added). Thus, under Eleventh Circuit precedent, the law judge may not use the grids to determine whether it is acceptable to rely upon the grids when there are nonexertional impairments.

The law judge's reliance on Social Security Ruling 83-10, which also states that the grids are based upon "numerous 'unskilled'

occupations existing at various exertional levels," does not warrant a different result. SSR 83-10 (S.S.A.); 1983 WL 31251. Thus, the law judge, relying upon SSR 83-10, found that a limitation to simple work had little or no effect on the occupational base of light work represented by the grids and, therefore, a significant number of jobs existed in the national economy that the plaintiff could perform (Tr. 70). However, Social Security Rulings do not have the force of law. Miller v. Commissioner of Social Security, 246 Fed. Appx. 660, 662 (11th Cir. 2002). In all events, SSR 83-10 does not overcome contrary Eleventh Circuit precedent that was rendered after the promulgation of that Social Security Ruling.

Finally, the Commissioner argues that Jordan v. Commissioner of Social Security Administration, 470 Fed. Appx. 766, 770 (11th Cir. 2012), shows that the law judge did not err in relying exclusively upon the grids to determine the plaintiff's vocational opportunities (see Doc. 29, pp. 12, 15–16). In that case, the law judge determined that Jordan had a residual functional capacity for medium unskilled work. 470 Fed. Appx. at 770. He then concluded, based exclusively on the grids, that Jordan's occupational base for medium work was not significantly compromised by

15

her nonexertional mental impairments and, therefore, she was not disabled. Id.

The Eleventh Circuit affirmed the decision, holding that "the ALJ did not err in relying on the Grids, without testimony from a VE, to establish the existence of jobs in the national economy that Jordan could perform." Id. at 770–71. It reasoned that, because "[a]ll of the jobs listed in the Grids are unskilled," the law judge could determine, without vocational testimony, that the nonexertional limitation to unskilled work did not significantly compromise her capacity to perform medium work encompassed by the grids. See id. at 770.

Jordan's holding suggests a possible inconsistency in Eleventh Circuit principles governing the use of the grids. However, this possible discrepancy does not affect the disposition of this case. Thus, as an unpublished opinion, Jordan does not have precedential value. Borden v. Allen, 646 F.3d 785, 808, n. 27 (11th Cir. 2011), citing 11th Cir. R. 36-2. Furthermore, the prior precedent rule requires this court to follow the decision issued first in time. Morrison v. Amway Corp., 323 F.3d 920, 929 (11th Cir. 2003); Walker v. Mortham, 158 F.3d 1177, 1188 (11th Cir.1998). As indicated, Marbury v. Sullivan, supra, establishes that a finding that

16

nonexertional limitations do not significantly compromise the availability of jobs must be supported by the testimony of a vocational expert.

For the foregoing reasons, the law judge erred in relying exclusively on the medical-vocational guidelines and in failing to obtain the testimony of a vocational expert concerning the jobs that the plaintiff could perform in the national economy with her limitations.

B.   The plaintiff's second argument is that the law judge's determination of her residual functional capacity is not supported by substantial evidence.   Because the matter is being remanded, and a new decision will be issued, it is appropriate to pretermit this contention.

It is, therefore, upon consideration,

ORDERED:

That the Commissioner's decision is hereby **REVERSED** and the matter remanded for further proceedings.   The Clerk shall enter judgment in accordance with this Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this ___6____<sup>th</sup> day of January, 2021.

Thomas G. Wilson
_____
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

17